IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LEE FLOYD BEBLBY,                                                                                   PLAINTIFF

v.                                            CASE NO. 07-5028

ANDREA GARRETT, Nurse; and
DOCTOR HUSKINS;                                                                                     DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On August 24, 2007, Defendants filed summary judgment motions (Doc. 20 in 07-5028 and Doc. 24 in 07-5036)[1]. Plaintiff brings his case *pro se* and *in forma pauperis* under Section 1983; his claims are against Defendants in their individual and official capacities. The case is referred to the undersigned by the Honorable Chief Judge Jimm Larry Hendren for the purpose of issuing a report and recommendation on Defendants' Motions for Summary Judgment.[2]

**I. Background**

Plaintiff's claims arise from the time of his confinement in the Benton County Detention Center. Plaintiff claims his right to freedom of religion was violated as he was served pudding, Jell-O and jelly on his dietary food tray while practicing the Muslim faith and not eating pork and he was

---

[1] Although Plaintiff's cases have been consolidated, Defendants filed two separate Summary Judgment Motions, one in each case. Plaintiff's response was a consolidated response to both Motions. Accordingly, this Report and Recommendation is regarding both Motions for Summary Judgment and encompasses all claims by Plaintiff in cases 07-cv-5036 and 07-cv-5028. (*See* Doc. 14, directing all future pleadings to be filed in the lead case, 07-cv-5028).

[2] Plaintiff was given additional time by the Court (*See* Doc. 37 in 07-5028) in which to supplement his Complaint with medical evidence regarding his injuries due to his claims of excessive force. As the Court has determined the Defendants' Motion for Summary Judgment regarding Plaintiff's claims of excessive force should be denied (*see II, D below*), the Court is issuing this Report and Recommendation. It is the recommendation of the undersigned that any evidence submitted by Plaintiff regarding these injuries be given full consideration at the hearing on Plaintiff's claim of excessive force, to be set at a later date.

not allowed a prayer rug and Koran by the deputies at the visitation desk. Plaintiff claims he was denied medical care because his cholesterol level was not checked and he was denied treatment for arm/elbow pain. Plaintiff claims cruel and unusual punishment as he was not provided enough calories in his daily diet. Finally, Plaintiff claims he was subjected to excessive force by Sgt. Tomlin, who beat and placed Plaintiff in the hole for praying in his cell.

**II. Discussion**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The Court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A. <u>Freedom of Religion</u>

Plaintiff alleges Defendants violated his right to free exercise of religion by denying him a pork-free diet and providing him with Jell-O, pudding, and jelly on his meal tray. When Plaintiff complained of these offending foods on his tray, Defendants researched the contents of the food and found them to be marked with the symbol for Halal or "clean" foods for practicing Muslims. (Doc. 22, Ex. 5 in 07-cv-5028). Accordingly, Plaintiff continued to receive the foods.

"In a claim arising under the First Amendment's Free Exercise Clause, an inmate must first establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious belief." *Brown-El v. Harris,* 26 F.3d 68, 69 (8th Cir.1994). The Eighth Circuit Curt of Appeals has

held that a pork-free diet is an essential practice of Islam. *See, e.g., Kind v. Frank*, 329 F.3d 979, 980 (8th Cir. 2003). In this case, it appears Defendants served Plaintiff a clean diet as prescribed by his religion. Plaintiff has proffered no evidence to contradict Defendants assertion that the foods placed on Plaintiff's tray were Halal. Moreover, even if the foods were not Halal, it appears qualified immunity would apply to the Defendants.

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs,* 89 F.3d 542, 544 (8th Cir. 1996). It is well settled that jail and prison inmates "have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion." *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir. 1987). The government defendants in this case held an objectively reasonable belief that they were not violating the plaintiff's constitutional rights by offering him food products labeled as Halal out of respect for his religious beliefs. *Curry v. Crist,* 226 F.3d 974, 977 (8th Cir. 2000); *see also Kind*, 329 F.3d at 980 -981 (finding qualified immunity would protect prison officials who offered Muslim inmate pork-free but not vegetarian meals.).

Plaintiff also alleges his right to the free exercise of religion was violated by Defendants Hadley and Cypert because those deputies denied him a Koran and prayer rug, which were dropped off at the detention center for his use. However, Plaintiff states in his complaint (Doc. 1 in 07-cv-5036) that he was provided a copy of the Koran, although it was a copy the detention center had purchased, not one provided by Plaintiff's family. Additionally, Plaintiff states he was allowed a towel for use as a prayer rug. As Plaintiff was provided with the items he claims were denied him,

the undersigned can not find Plaintiff's right to exercise religion was substantially burdened.[3] Accordingly, it is the recommendation of the undersigned that Defendant's Motion for Summary Judgment regarding Plaintiff's claims arising under the First Amendment be GRANTED.

### B. Denial of Medical Care

Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). The Eighth Amendment's "deliberate indifference" standard of review regarding conditions of confinement and claims of denial of medical care is the same for both pretrial detainees as well as convicted prisoners. *See, e.g.*, *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994); *Farmer v. Bernnan*, 511 U.S. 825 (1994). "Deliberate indifference" encompasses both that the official knows of and disregards and excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 825-26. The official must be (1) aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official must also draw the inference. *Id*.

Deliberate indifference to medical care includes intention interference with prescribed treatment. *See Estelle*, 429 U.S. at 104-05; *see also Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors who fail to respond to prisoner's serious medical needs."). Mere allegation on part of

---

[3] In their Memorandum Brief in Support of Motion for Summary Judgment, Doc. 25 in 07-cv-5036, Defendants argue Plaintiff only alleged the "ladies in visitation" denied him the prayer rug and Koran from his family. However, the Court entered an Order on March 15, 2007, directing the Defendants to assist the court in identifying the visitation officers working on the date and time Plaintiff claimed he was denied the Koran and prayer rug. (Doc. 7 in 07-cv-5036). Defendants answered on April 3, 2007 identifying Deputy Hadley and Deputy Cypert. (Doc. 9 in 07-cv-5036). The Court then directed these individuals be substituted for the named defendant "Benton County Detention Center Visitation Officers." (Doc. 14 in 07-cv-5036). Thus, the Court rejects Defendants' contention that Plaintiff has not properly identified individuals he alleges denied him a prayer rug and Koran.

prisoner, unsupported by medical evidence, as to treatment he allegedly required is not sufficient to prevent entry of summary judgment in Section 1983 action arising from prison officials' failure to provide him with such treatment. *Crooks v. Nix,* 872 F.2d 800 (8th Cir. 1989).

In this case, Plaintiff has alleged that Defendants failed to properly check his cholesterol levels. On December 26, 2006 Plaintiff complained his cholesterol was high and he had been eating foods he knew were not good for his cholesterol, but he liked them and had not informed Defendants of his cholesterol issues. Plaintiff was told to see the doctor. On the next day, December 27, 2006, Plaintiff sent another medical request, noting he had high cholesterol and he needed blood drawn. Plaintiff was seen by the doctor on December 29, 2006 for his complaints related to diet, rash, cholesterol, and dental problems. He was prescribed minocin for ten (10) days. It does not appear that his blood was drawn by the doctor. On January 16, 2007 he was placed on a cardiac diet.

Plaintiff has presented no evidence he required analysis of his blood. At most, it appears Plaintiff requested to have his blood drawn, a request which was not followed by the doctor. Mere disagreement with medical treatment is not sufficient to state a claim pursuant to Section 1983. *Smith v. Marcantonio,* 910 F.2d 500, 502 (8th Cir. 1990). Additionally, to the extent Plaintiff is alleging a delay in medical treatment for his cholesterol, "[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Plaintiff has presented no medical evidence he was harmed by any delay in checking his cholesterol levels or providing him with a cardiac diet.

Plaintiff also claims the Defendants were deliberately indifferent to his medical needs by not providing him with adequate medical care after his arm was injured on February 5, 2007, after an

altercation with Defendant Tomlin.

Plaintiff was moved to a different pod after the incident. Upon arrival, he complained his left arm was sore and possibly broken. Defendant Nurse Garrett examined Plaintiff, found no swelling, and ordered Plaintiff to be sent for X-rays. Plaintiff was taken for X-rays and was seen by Dr. Huskins. Plaintiff alleges he was given no treatment beyond the examination of his arm. Plaintiff complained on February 5, 2007 that his arm was hurting. The nurse responded that he had been seen by the doctor. Plaintiff continued to complain of pain on February 6, 2007, and was told to put in a medical request. It was also noted that Plaintiff was using a full range of motion in his left arm on February 6, 2007, as observed by detention center staff. On February 21, 2007, Plaintiff was seen by Dr. Huskins for elbow pain and was prescribed motrin. On February 28, 2007 he was again seen by Dr. Huskins for elbow pain and was given Aleve.

The record clearly establishes that Plaintiff was given medical care regarding his complaints of elbow pain. Plaintiff's complaints are with the treatment given, not that he was denied any treatment. The record shows treatment was provided. As noted above, mere disagreement with medical treatment is not sufficient to state a claim pursuant to Section 1983.

Accordingly, it is the recommendation of the undersigned that Defendants' motion for Summary Judgment as to Plaintiff's claims of denial/delay in medical care be GRANTED.

C. <u>Inadequate Diet</u>

Plaintiff claims he was served an inadequate diet while in the Benton County Detention Center. He claims he lost weight as a result of this inadequate diet. Defendants have submitted the Adult Menu for the Benton County Jail, signed by an Aramark Correctional Services Dietician to certify the menu meets all standards of dietary requirements.

Prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). However, Plaintiff has presented no evidence that the food he was served was nutritionally inadequate, that the menu submitted by Defendants' is not representative of his diet, or that he lost weight. There is no record of any grievances or medical requests regarding his weight being submitted. Plaintiff only complained when his snack was discontinued. The snack was subsequently restarted. Plaintiff states he was receiving fewer calories than the other inmates, but provides no evidence to support this allegation. It is the recommendation of the undersigned that Defendants' Motion for Summary Judgment as to Plaintiff's claims of inadequate diet be GRANTED.

D. <u>Excessive Force</u>

Finally, Plaintiff claims excessive force was used against him by Defendant Tomlin. Plaintiff claims he was given permission to pray in his cell during the time inmates were given to clean cells and go to the dayroom. Plaintiff states he only needed five minutes to complete his prayers and was doing so when Sgt. Tomlin told him to leave his cell and go to the dayroom. Plaintiff agrees he did not comply with Tomlin's order to go to the dayroom, but rather inquired as to why he was not allowed to finish his prayers. Plaintiff then states he was told to get against the wall, which he did not do, but continued his inquiry. Tomlin then called for back-up and Plaintiff was told to get on the floor, an order he alleges he complies with. Once Plaintiff was on the floor, he alleges Tomlin used a grip on his arm that required twisting Plaintiff's arm until it "popped." Plaintiff alleges he was not resisting at this time, but was informing Tomlin the hold being used was painful.

Defendants state that Plaintiff continued to pray in his cell after being told to go to the dayroom. Defendants state Plaintiff, like other inmates, could pray in the dayroom and had done so

in the past. Defendants state that Plaintiff continued to pray and resisted orders, and had to be placed on the floor by Defendant Tomlin and non-party Deputy Undiano. While on the floor, Defendants allege Plaintiff resisted by kicking with his knees, refusing to submit his right hand, and pulling away. Defendants state Tomlin applied pressure to Plaintiff's arm in an effort to have Plaintiff submit to handcuffing.

The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, relies on an objective reasonableness standard. *Johnson-El v. Schoemehl,* 878 F.2d 1043, 1048-49 (8th Cir.). While the Eighth Circuit has not drawn a bright line dividing the end of the arrestee's status and the beginning of the pre-trial detainee's status, *see, e.g., Wilson v. Spain,* 209 F.3d 713, 715 & n. 2 (8th Cir.2000), it is clear that the state may not punish a pretrial detainee. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Williams-El v. Johnson,* 872 F.2d 224, 229 (8th Cir.1989). Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. *Whitley v. Albers,* 475 U.S. 312, 318-22 (1986). We consider "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21; *see also Estate of Davis v. Delo,* 115 F.3d 1388, 1394 (8th Cir.1997).

In this case, the parties pose two scenarios. In Plaintiff's version of events, he was complying with Tomlin's orders at the time the force was applied and Tomlin appeared to be applying force to Plaintiff's arm simply to cause harm. However, in Tomlin's version of the events, the force was clearly applied in a good-faith effort to maintain or restore discipline. Given this material difference in facts, it is the recommendation of the undersigned that Defendants' Motion for Summary

Judgment as to Plaintiff's claims of excessive force against Defendant Tomlin be DENIED and an evidentiary hearing be set as to Plaintiff's claim of excessive force against Defendant Tomlin. As noted above (*see* footnote 2), it is further recommended that any supplement by the Plaintiff regarding his injuries (*see* Doc. 37) be given full consideration at the evidentiary hearing on his excessive force claim.

   E. Official Capacity Claims

Plaintiff has sued Defendants in their individual and official capacities. Plaintiff's official capacity claims are tantamount to suing Benton County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *See id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91.

Plaintiff states he is alleging official capacity claims. (*See* Doc. 33, ¶ 1 in 07-5028). Plaintiff states the custom or policy that caused his federal constitutional rights to be violated was "freedom of religion, excessive force, denied medical treatment, deliberately indifferent, right to law

library." Plaintiff indicates there is a policy of only allowing law library access to those inmates who are not represented by counsel. Under *Bounds v. Smith,* 430 U.S. 817, 828 (1977) prison authorities must provide inmates with adequate law libraries or adequate assistance from persons trained in the law. Plaintiff does not demonstrate how the Benton County policy of limiting law library access deprives inmates of adequate assistance from persons trained in the law. Clearly, Plaintiff has not shown evidence of, any unconstitutional policy by Benton County. It is the recommendation of the undersigned that Plaintiff's claims against Defendants' in their official capacities be DENIED.

### III. Conclusion

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment, Doc. 24 in case 07-cv-5036 be GRANTED in part and DENIED in part. I recommend the Motion for Summary Judgment be DENIED as to Plaintiff's claims of excessive force against Defendant Tomlin and GRANTED as to all other claims and Defendants. I further recommend Defendants' Motion for Summary Judgment, Doc. 20 in case 07-cv-5028 be GRANTED in its entirety.

**Plaintiff has until and including Monday, March 24, 2008 in which to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636 (b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 12th day of March 2008.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE